UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MIKE SETTLE ]
    Plaintiff, ]
]
v. ] No. 3:07-0401
] Judge Campbell/Bryant
RICKY BELL, et al. ]
    Defendants. ]

To: Honorable Todd Campbell, Chief District Judge

# REPORT AND RECOMMENDATION

By an order entered April 12, 2007 (Docket Entry No. 4), the Court referred this action to the Magistrate Judge "to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b), Fed.R.Civ.P. and the Local Rules of Court."

Presently pending before the Court are defendants' Motion for Summary Judgment (Docket Entry No. 44), plaintiff's Motion in Opposition to Summary Judgment (Docket Entry No. 50), plaintiff's Amended Complaint (Docket Entry No. 56), defendants' Motion to Dismiss Amended Complaint (Docket Entry No. 66), and plaintiff's Motion in Opposition to the Motion to Dismiss Amended Complaint (Docket Entry No. 70).

The undersigned has conducted a review of the complaint (Docket Entry No. 1), the amended complaint, the defendants' Motion for Summary Judgment, the defendants' Motion to Dismiss

1

Amended Complaint, the plaintiff's objections and the record as a whole.[1] From this review, the undersigned has concluded that the defendants' Motion for Summary Judgment has merit. Accordingly, it is respectfully recommended that the defendants' Motion for Summary Judgment should be granted and those claims set forth in the plaintiff's original complaint be dismissed.

It has further been found that all claims in the plaintiff's amended complaint, with the exception of his retaliation claim, are insufficient to sustain an entitlement to relief. Therefore, it is also respectfully recommended that defendants' Motion to Dismiss Amended Complaint should be granted in part and denied in part, leaving the plaintiff's retaliation claim as the sole remaining issue for adjudication.

## I. Background

The plaintiff, proceeding *pro se*, is an inmate at the Riverbend Maximum Security Institution in Nashville. He brings this action pursuant to 42 U.S.C. § 1983 against Ricky Bell, Warden of the facility, Sandra Hall, a Unit Manager at Riverbend, and Sgt. Fred Schildkamp, a guard at Riverbend, seeking declaratory, injunctive and monetary relief.

In August, 1999, the plaintiff became ill and was transported from the Hardeman County Correctional Facility to a hospital in Jackson, Tennessee. Upon examination, he was admitted to the hospital for further treatment. Two days later, the plaintiff overpowered a guard, took the officer's weapon and pointed it at the guard's head. The plaintiff escaped from the hospital with a hostage in a stolen car. Shortly thereafter, he was recaptured and returned to prison. Willis v. Settle, 162

---

[1] The plaintiff has also filed a Motion for Summary Judgment (Docket Entry No. 73). The defendants have been granted an extension of time in which to respond to the plaintiff's Motion should the disposition of the pending motions described above dictate the necessity for a response. *See* Docket Entry No. 77. Therefore, a recommendation for disposition of the plaintiff's Motion for Summary Judgment shall be reserved for a later time.

2

S.W.3d 169, 173 (Tenn. Ct. App. 2004).

The plaintiff admitted to authorities that he had planned the escape prior to being taken to the hospital. Docket Entry No. 45-1 at pg. 3. At a disciplinary hearing, he pled guilty to charges of escape with a deadly weapon and assault on a staff member with a deadly weapon. Besides giving the plaintiff thirty (30) days in punitive segregation for each charge, the disciplinary board imposed a $5 fine for each count and recommended that he remain in administrative segregation with the loss of some accrued sentence reduction credits. *Id.* at pgs. 3-4.

The Warden at the Hardeman County Correctional Facility adopted the recommendation of the disciplinary board and kept the plaintiff in administrative segregation following service of his 30 day sentences. He remained in segregation until July 17, 2006, the date he was transferred to his present place of confinement. Upon his arrival at Riverbend, the plaintiff was promptly placed in administrative segregation. Counting his time at the Hardeman County Correctional Facility, the plaintiff has remained in administrative segregation for over eight years. Docket Entry No. 14 at pg. 1.

## II. The Complaint

According to the complaint (Docket Entry No. 1), the defendants have violated the plaintiff's rights in a number of ways.[2] More specifically, the plaintiff alleges that defendants Bell and Hall

1. infringed upon his rights to due process and equal protection as well as forced him to endure cruel and unusual punishment by keeping him confined in administrative segregation for more than eight years;

2. offended plaintiff's right to equal protection by denying

---

[2] The only defendants named in the original complaint are Warden Bell and Ms. Hall. Sgt. Schildkamp was later added as a defendant in the plaintiff's amended complaint.

3

> him privileges such as a radio, hat, shorts and the unlimited use of a telephone that were available to other segregated prisoners;
>
> 3. subjected the plaintiff to cruel and unusual punishment by denying him time in the exercise yard (11/28/06, 12/22/06, 12/25/06 and 1/15/07);
>
> 4. retaliated against the plaintiff for requesting a grievance by cutting off the electricity to his cell (1/31/07) and by refusing him time in the exercise yard (3/14/07); and
>
> 5. wrongly denied the plaintiff a work assignment, an opportunity to accrue sentence reduction credits and a shower during a prison lockdown.

**A.) Elements of a § 1983 Cause of Action**

In order to establish a claim for § 1983 relief, the plaintiff is required to plead and prove that the defendants, while acting under color of state law, deprived him of some right or privilege secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

**B.) Standard of Review**

The defendants have filed a motion (Docket Entry No. 44) seeking summary judgment for those claims raised by the plaintiff in his complaint. Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In order to prevail on a motion for summary judgment, the moving party must conclusively demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979).

In considering a motion for summary judgment, the Court must view all the facts and

4

inferences to be drawn therefrom in the light most favorable to the nonmoving party. SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985). The nonmoving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986).

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. *Id*, at 477 U.S. 248. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

**C.) Confinement in Administrative Segregation**

The plaintiff complains that the defendants have infringed upon his rights to due process and equal protection as well as subjected him to cruel and unusual punishment by keeping him confined in administrative segregation for over eight years (Claim No. 1).

In December, 2005, the plaintiff brought an unsuccessful action in state court challenging his confinement in administrative segregation on due process grounds. Settle v. Little, et al., Docket Entry No. 45-1. The defendants assert that the plaintiff's current claims attacking his administrative segregation are barred under the doctrine of *res judicata* by this prior state court litigation.

5

A claim will be barred under the doctrine of *res judicata* where (1) prior litigation involved the same parties or their privies, (2) the prior litigation was concluded by a final judgment on the merits, and (3) the prior litigation involved the same claim or cause of action as the present lawsuit. Hydranautics v. Film Tec Corp., 204 F.3d 880 (9th Cir. 2000).

In this instance, the claims previously litigated in state court, while similar, are not the same as those being raised here. The plaintiff's state court claims involved his confinement at the Hardeman County Correctional Facility and not Riverbend. The current defendants were not parties to the prior state court litigation, nor were they privies to said litigation simply by virtue of the fact that they share a common employer. As a consequence, *res judicata* does not bar consideration of the plaintiff's administrative segregation claims.

**1.) Due Process**

Administrative segregation is available to prison officials as a means of control and management. Segregating a former escapee involved in a hostage situation from the general prison population is an appropriate response toward that end. TDOC Policy No. 404.10(VI)(A)(1)(a-b). The plaintiff does not dispute his status as a former escapee who took a hostage. He does contend, however, that he has been kept in administrative segregation for over eight years in violation of his right to due process.

When a prisoner has been subjected to an "atypical and significant hardship ..... in relation to the ordinary incidents of prison life," he is entitled to some degree of due process. Sandin v. Conner, 515 U.S. 472, 483 (1995). Continuous administrative segregation for several years has been held to constitute an atypical and significant hardship for a prisoner. Harden-Bey v. Rutter, 524 F.3d 789 (6th Cir. 2008)(more than three years in administrative segregation); *see also* Shoats v. Horn,

6

213 F.3d 140, 144 (3rd Cir. 2000)(eight years in administrative segregation). Thus, within the context of administrative segregation, the Due Process Clause requires prison officials to conduct periodic informal, nonadversarial reviews at which time the prisoner has an opportunity to state his views. Hewitt v. Helms, 459 U.S. 460, 476 (1983). To provide a segregated prisoner with the process required, Tennessee Department of Correction policy mandates (1) a monthly hearing by the prison administrative review panel to determine whether the segregated prisoner is fit for release into the general prison population, TDOC Policy No. 404.10(VI)(B)(3); and (2) the segregated prisoner shall be present at the review hearing "unless the inmate's presence would cause concern for security or safety reasons, or the inmate refuses to attend, which shall be documented." TDOC Policy No. 404.10(VI)(B)(4).

By way of exhibit, the plaintiff has acknowledged that prison officials have periodically reviewed his continued confinement in administrative segregation. *See* Docket Entry No. 17; Exhibit C. In fact, the complete record of the plaintiff's administrative reviews consists of one hundred twenty (120) pages which was provided to the plaintiff. *Id*.; Exhibit E; Docket Entry No. 1 at pgs. 16-17. The plaintiff has had opportunities to express his views on continued segregation to prison officials.[3] *See* Docket Entry No. 17; Exhibit D (letter from Warden Bell to the plaintiff addressing his continued confinement in segregation). Moreover, plaintiff's mental health records show that his segregation is not arbitrary and that ample justification exists for keeping him in a more secure environment. Docket Entry No. 36-2; Exhibit No. 3 ("I feel like killing a lot of people", at pg. 3)("Inmate talked about his mission in life and how he was going to kill prison staff because he

---

[3] While it is not entirely clear from the record, the plaintiff has not specifically alleged that he was denied notice of the monthly reviews and an opportunity to offer his views on the subject.

7

believed them to be demons", at pg. 4).[4] Therefore, having made monthly reviews and provided the plaintiff with an opportunity to express his feelings on continued segregation, the defendants have not violated the plaintiff's right to due process.

**2.) Equal Protection**

The plaintiff alleges that his continued confinement in administrative segregation offends the Equal Protection Clause because other inmates with more serious charges have long since been released from segregation. Docket Entry No. 1 at pg. 4. An equal protection claim requires more than a simple showing that other inmates have been treated differently than the plaintiff. Booher v. U.S. Postal Service, 843 F.2d 943, 944 (6th Cir. 1988). The plaintiff must also allege and prove that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." Newell v. Brown, 981 F.2d 880, 887 (6th Cir. 1992), cert. denied, 510 U.S. 842 (1993).

The plaintiff is an African American and, as such, is a member of a suspect class. Docket Entry No. 2 at pg. 5. He has not alleged, however, nor does it appear from this record, that the plaintiff has been kept in administrative segregation on account of his race. Quite to the contrary, the record reflects that the plaintiff suffers from some serious psychological problems that, regardless of his race, justify his continued segregation. Consequently, the plaintiff's status as a segregated prisoner fails to implicate a claim arising under the Equal Protection Clause.

---

[4] In his Declaration for Mental Health Treatment, the plaintiff acknowledges that he has been diagnosed as suffering from "schizoaffective disorder, depressed type", for which he receives medication. "I hear voices, see visions and deeply depressed". Attachment to Docket Entry No. 53 at pgs. 2-3. The plaintiff has also said that "I hear voices and believe that I am a God that must purify the church before the Pope releases the Dark Angel". Docket Entry No. 26 at pg. 2.

8

**3.) Eighth Amendment - Cruel and Unusual Punishment**

The plaintiff also contends that his continued confinement in segregation rises to the level of cruel and unusual punishment in violation of the Eighth Amendment. To state an Eighth Amendment claim, the plaintiff must show that he has been deprived "of the minimal civilized measure of life's necessities". Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Merely alleging that prison conditions are restrictive and perhaps even harsh will not suffice because "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society". Hudson v. McMillan, 503 U.S. 1, 9 (1992).

The plaintiff has not alleged that the defendants have denied him any of life's necessities such as adequate food, clothing, shelter, and medical care while in segregation. Hence, while placement in segregation may be uncomfortable for the plaintiff, it does not, in and of itself, constitute cruel and unusual punishment. Murray v. Unknown Evert, 2003 WL 22976618 (6th Cir. December 8, 2003). Therefore, the plaintiff's Eighth Amendment claim, as it relates to his continued confinement in administrative segregation, can not succeed.

**D.) Conditions of Confinement Claims**

The remaining claims in the complaint (Claim Nos. 2-5) focus upon conditions of confinement not otherwise specifically related to the plaintiff's continued segregation. The Prison Litigation Reform Act prohibits prisoners from challenging conditions of their confinement in federal court until they have exhausted all available administrative remedies. 42 U.S.C. § 1997e(a). Consequently, before a district court can adjudicate any conditions of confinement claim set forth in a prisoner's complaint, the court must determine whether the prisoner has complied with the exhaustion requirement. Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

9

The prisoner plaintiff bears the burden of establishing the complete exhaustion of administrative remedies. Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1998). To make the requisite showing, the prisoner plaintiff must allege that all available administrative remedies have been exhausted for each claim in his complaint and should attach documentation to the complaint indicating the administrative disposition of any grievances that may have been filed. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir.), cert. denied, 531 U.S. 1040 (2000). An inmate cannot simply fail to file a grievance or abandon the grievance process before completion and claim that he has exhausted his administrative remedies. Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999).

In an affidavit (Docket Entry No. 47), the Grievance Committee Chairperson (Sgt. Gregory Leonard) at Riverbend has provided copies of all grievances filed by the plaintiff prior to initiating the instant action. The affidavit and its attachments show that the plaintiff sought administrative relief for his claim that he was denied a radio in violation of his right to equal protection (Grievance No. 181754), his claim that he was denied yard time on December 22, 2006 (Grievance No. 186010), and his claim that he was wrongly denied a shower during lockdown (Grievance No. 186250).[5] He did not exhaust administrative remedies for the remaining claims in his complaint. As a consequence, these claims (i.e., Claim No. 2 - denial of hat, shorts and telephone use; Claim No. 3 - denial of time in the exercise yard on 11/28/06, 12/25/06 and 1/15/07; Claim No. 4 in its entirety; and Claim No. 5 - denial of a work assignment and the opportunity to accrue sentence reduction credits) are properly subject to dismissal without prejudice.

The plaintiff alleges that, on July 17, 2006, his right to equal protection was violated when

---

[5] The plaintiff also grieved the shut off of electricity to his cell on January 31, 2007 (Grievance No. 186817). He did not, however, assert that the cutoff was a retaliatory act for the filing of grievances, as he now claims.

10

he was not allowed to have a radio while "inmates in Unit 1, 3, 4 are allowed" radios. Docket Entry No. 1 at pg. 4. The defendants dispute this allegation with an affidavit (Docket Entry No. 49) from Sandra Hall who states that no inmate in administrative segregation is allowed a radio. As noted above, the plaintiff can not sustain an equal protection claim merely by asserting that other prisoners were given a privilege not available to him. Booher, supra. Therefore, despite an apparent issue as to a material fact, i.e., whether other inmates in segregation have been allowed to keep a radio, the plaintiff's equal protection claim will fail unless he can demonstrate that he was "victimized because of some suspect classification". Newell, supra. The plaintiff has made no such showing. Consequently, this equal protection claim fails as a matter of law.

The plaintiff also claims that he was subjected to cruel and unusual punishment when he was denied time in the exercise yard (12/22/06) and a shower during a period of lockdown. These two separate and wholly isolated incidents, even if true, do not rise to the level of cruel and unusual punishment. They simply do not implicate the deprivation "of the minimal civilized measure of life's necessities". Rhodes, supra. Consequently, these claims must also fail as a matter of law.

### III. Amended Complaint

The plaintiff has also filed an amended complaint (Docket Entry No. 56), to which the defendants have filed a Motion to Dismiss Amended Complaint (Docket Entry No. 66) and the plaintiff has submitted a Motion in Opposition to the Motion to Dismiss Amended Complaint (Docket Entry No. 70).

The amended complaint contains claims challenging conditions of the plaintiff's confinement that have arisen subsequent to the date that this action was originally filed. These claims include

11

1. the plaintiff was subjected to cruel and unusual punishment when he was denied bed sheets for a total of 133 hours (51/2 days);

2. the plaintiff was denied equal protection when, on June 18, 2007, he was denied yard time while other segregated inmates were allowed in the yard;

3. Sgt. Schildkamp verbally abused the plaintiff;

4. on June 19, 2007, Sgt. Schildkamp searched the plaintiff's cell and stole or damaged some of his personal property in retaliation for the filing of grievances; and

5. on July 18, 2007, plaintiff's anti-psychotic medication was given to another prisoner.

**A.) Standard of Review**

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., is reviewed under the standard that dismissal is appropriate only if it appears that the complaint does not contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1969 (2007). Accordingly, the amended complaint must contain enough factual allegations to state a claim for relief that is plausible on its face. *Id*. at 127 S.Ct. 1974[6]; United States *ex rel.* Bledsoe v. Community Health Systems, Inc., 501 F.3d 493, 502 (6th Cir. 2007).

A district court is obliged to construe the amended complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. Allard v. Weitzman, 991 F.2d 1236, 1240 (6th Cir. 1993). An allegation capable of more than one inference must be construed in the plaintiff's

---

[6] Twombley abrogated the "no set of facts" test announced in Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

12

favor. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). But more than bare allegations of legal conclusions are required to withstand a Rule 12(b)(6) motion. As a consequence, although the factual allegations in the amended complaint need not be detailed, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007).

**B.) Denial of Bedding**

The plaintiff alleges that he was subjected to cruel and unusual punishment when he was denied sheets for his bed for a 133 hour period in June, 2007. Docket Entry No. 56 at pg. 1. As noted above, for a prisoner to state a claim of cruel and unusual punishment, he must be able to show that he was deprived of the "minimal civilized measure of life's necessities". Rhodes v. Chapman, supra. This means that prison officials are obligated to provide inmates with adequate food, clothing, shelter and medical care, as well as taking reasonable measures to insure their safety. *Id* at 452 U.S. 348. Merely alleging that prison conditions are restrictive and perhaps even harsh will not suffice because "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society". Hudson v. McMillan, supra.

In this instance, the plaintiff has not claimed, nor is it apparent from the record, that the lack of bed sheets for this limited period of time in any way endangered or compromised the plaintiff's health. The alleged deprivation took place during the summer rather than during a period of cold weather. Thus, while the plaintiff may have been uncomfortable with the lack of bedding, this deprivation did not constitute cruel and unusual punishment. *See* Brodak v. Nichols, 1998 WL 553032 (6th Cir. August 17, 1998)(requiring prisoners to sleep on the floor without likewise depriving them of essential food, basic sanitation, or safe temperatures does not rise to the level of

13

an Eighth Amendment violation).

**C.) Denial of Yard Time**

According to the amended complaint, the plaintiff's right to equal protection was violated when, on June 18, 2007, he was denied time in the exercise yard while inmates from other housing units were allowed out into the yard. Docket Entry No. 56 at pg. 2.

To assert this claim successfully, the plaintiff must plead and prove that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." Newell v. Brown, supra. The plaintiff has not alleged that the inmates who were allowed exercise time were similarly situated to him. Nor has he pled that he was denied yard time on this particular occasion because he is a member of a suspect classification. All he has alleged is that he was treated differently than other inmates, and that standing alone is not sufficient to sustain an equal protection claim. Booher v. U.S. Postal Service, supra.

**D.) Verbal Abuse**

The plaintiff complains that Sgt. Schildkamp verbally threatened and abused him. Docket Entry No. 56 at pg. 3. It is well settled, however, that mere words, no matter how offensive, threatening, or insulting, do not rise to the level of a constitutional violation. Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999); Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987). For that reason, even if Sgt. Schildkamp did direct some offensive language at the plaintiff, this alleged verbal abuse fails to state a claim upon which § 1983 relief can be granted. Paul v. Davis, 424 U.S. 693 (1976).

**E.) Destruction of Property as a Retaliatory Act**

On June 19, 2007, Sgt. Schildkamp conducted a search of the plaintiff's personal property.

14

Following the search, the plaintiff discovered that some of his personal property had been stolen or damaged. In the amended complaint, the plaintiff alleges that Sgt. Schildkamp mishandled his personal property "in retaliation for filing grievances and complaint." Docket Entry No. 56 at pgs. 2-3.[7]

To state a First Amendment retaliation claim, the plaintiff must plead and prove (1) that he was engaged in protected conduct; (2) that he suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected activity; and (3) the adverse action was motivated at least in part by the protected conduct. Thaddeus-X, supra, 175 F.3d at 394.

A prisoner has an undisputed First Amendment right to file grievances against prison officials. Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir. 2001); Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000). Thus, the plaintiff has alleged that he was engaged in protected conduct. The theft or destruction of personal property could quite easily deter a person of ordinary firmness from continuing to file grievances. Further, the plaintiff has alleged that the loss of his personal property was an act taken by a specific prison official in retaliation for the filing of grievances. It appears, therefore, that the plaintiff has stated a prima facie retaliation claim which survives a motion to dismiss.

**F.) Medication Given to the Wrong Prisoner**

The final claim in the amended complaint arose on July 18, 2007 when medical staff at the prison allegedly gave the plaintiff's antipsychotic medication to another prisoner. Docket Entry No. 56 at pg. 4.

---

[7] In their Motion to Dismiss, the defendants have addressed this solely as a due process property issue and have ignored the retaliatory aspect of the claim. Docket Entry No. 67 at pg. 5.

The plaintiff can not sue the defendants solely because of their status as supervisors or chief executive officers. 42 U.S.C. § 1983 will not support a claim posed on a *respondeat superior* theory of liability. Polk County v. Dodson, 454 U.S. 312, 325 (1981). Where there is no allegation of participation, either directly or indirectly, by a supervisor in an allegedly wrongful act, the complaint fails to state a cause of action upon which relief can be granted. *See* Dunn v. Tennessee, 697 F.2d 121, 128 (6th Cir.1982), cert. denied, 460 U.S. 1086 (1983).

In this case, the plaintiff does not identify any of the defendants as being directly involved in the mishandling of his medication. He simply states that the medical staff at the prison gave his medication to the wrong inmate. There has been no showing that any of the defendants had knowledge of the plaintiff's alleged medical needs or participated, either directly or indirectly, in the mishandling of his medication. At best, the plaintiff is alleging negligence on the part of an unidentified tortfeasor and negligence is not actionable under § 1983. Whitley v. Albers, 106 S.Ct. 1078, 1084 (1986). For that reason, this claim will not support an award of relief pursuant to § 1983.

## R E C O M M E N D A T I O N

For the reasons stated above, the undersigned has concluded that the defendants' Motion for Summary Judgment (Docket Entry No. 44) has merit. It is respectfully RECOMMENDED, therefore, that the Motion for Summary Judgment should be GRANTED and that those claims set forth by the plaintiff in his original complaint be DISMISSED.

The undersigned has also reviewed the defendants' Motion to Dismiss Amended Complaint (Docket Entry No. 66) and finds that this motion has some merit. Accordingly, it is further RECOMMENDED that the motion should be GRANTED in part and DENIED in part,

DISMISSING all claims in the amended complaint with the exception of the plaintiff's retaliation claim.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified period of time may be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See* Thomas v. Arn, 106 S.Ct. 466 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

*s/ John S. Bryant*
John S. Bryant
United States Magistrate Judge